RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0218p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

    No. 03-1202

JAMES HOWARD LAUGHTON,

        *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 02-20016—David M. Lawson, District Judge.

Argued: November 30, 2004

Decided and Filed: May 17, 2005

Before: DAUGHTREY and GILMAN, Circuit Judges; RICE, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Kenneth R. Sasse, FEDERAL DEFENDER'S OFFICE, Flint, Michigan, for Appellant. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee. **ON BRIEF:** Kenneth R. Sasse, FEDERAL DEFENDER'S OFFICE, Flint, Michigan, for Appellant. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee.

    DAUGHTREY, J., delivered the opinion of the court, in which RICE, D. J., joined. GILMAN, J. (pp. 8-9), delivered a separate dissenting opinion.

---

**OPINION**

---

    MARTHA CRAIG DAUGHTREY, Circuit Judge. In this appeal, we are asked to review the district court's determination that the search of a house pursuant to a warrant issued without probable cause was nevertheless valid under the "good faith" exception to the exclusionary rule announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897(1984). In doing so, we are faced with two issues: whether the affidavit submitted to the issuing magistrate was sufficient to support a finding of good faith simply because it was something more than "bare bones," and

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

whether information known to the officer but not conveyed to the magistrate has any relevance to the validity of the search, a question that was left unanswered in our recent *en banc* decision in *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (*en banc*). Because we conclude that the warrant failed to establish any nexus whatsoever between the residence to be searched and the criminal activity attributed to the defendant in the affidavit, we conclude that the district court's reliance on *Leon* cannot be sustained.

### FACTUAL AND PROCEDURAL BACKGROUND

Following a tip from confidential informant Thomas Pell that he was able to purchase methamphetamine from the defendant, James Laughton, the Isabella County Sheriff's Department arranged for Pell to make a controlled buy under surveillance. On November 1, 2001, Deputy Sheriff Scott Clarke and two other officers met with Pell to conduct the purchase. They provided him with $100.00 in marked money and patted him down to make sure that he was not carrying any of his own money or any other narcotics. They also searched his vehicle. Pell then drove to a residence to meet the defendant, and the police followed. The police observed Pell enter the house and re-emerge 10 to 20 minutes later. After Pell left the house, he drove to an arranged location, followed by the police, where he turned over methamphetamine that he reportedly had bought from Laughton for $100.00. Pell also reported that he had seen firearms in the house. Police officers arranged with Pell to repeat this same sequence of events less than a week later. On November 7, 2001, officers observed defendant Laughton outside the house when Pell approached.

The next day, November 8, 2001, Clarke swore an affidavit in an application for a warrant to search the residence where the controlled buys had occurred. The facts contained in the affidavit were related in four paragraphs:

> Your Affiant, Det. Scott Clarke is employed by the Isabella County Sheriff Department and has been so employed for 4 years and is currently assigned to BAYANET [Bay Area Narcotics Enforcement Team] narcotics team. During the course of Affiant's police career he has received extensive training in all aspects of law enforcement, including criminal investigation in regard to controlled substances. Affiant is familiar with the appearance of methamphetamine.

> Currently your Affiant is involved with ongoing drug investigations in Clare County. Through the course of this investigation, your Affiant has worked with a Confidential Informant (CI), who has made multiple purchases of Methamphetamine in the last 48 hours. Affiant has observed this controlled purchase.

> Through the course of this investigation your Affiant has learned that James Howard Laughton will keep controlled substances/drugs in the crotch area of his pants and in his pants pockets. Further that there are various stashes around the home.

> This CI is believed to be credible and reliable by the Affiant due to the fact that the CI has provided reliable information in the past which was corroborated by Affiant. CI has provided information that there is more controlled substances located at or in the residence or located on the person of James Howard Laughton due to the fact that he has observed these controlled substances.

A county prosecutor signed off on the affidavit, and a county court magistrate signed and issued the warrant. The police executed the search the next day, on November 9, and seized "methamphetamine, marijuana, firearms, and other evidence."

The defendant was charged in a six-count indictment with possession of methamphetamine and possession of methamphetamine with intent to distribute, possession of a firearm during a drug-trafficking crime, and being a felon in possession of a firearm. Prior to his trial, Laughton moved to suppress the evidence seized under the warrant on the ground that the warrant was not supported by probable cause. The district court held a suppression hearing and ruled that the affidavit did not demonstrate probable cause and was therefore invalid. However, the court also found that the warrant had been executed in reasonable reliance on its issuance and that the evidence was therefore admissible under the good faith exception to the exclusionary rule. The defendant was convicted on four of the six counts and sentenced to consecutive terms of incarceration totaling 97 months. He now appeals the district court's denial of his motion to suppress.

### *DISCUSSION*

It is a basic principle of the Fourth Amendment that for a search warrant to issue there must be probable cause. U.S. Const. amend IV; *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In determining whether there is probable cause to issue a search warrant, the task of the issuing magistrate is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When reviewing the denial of a motion to suppress, we defer to a district court's findings of fact unless they are clearly erroneous, and we review the court's conclusions of law de novo. *Carpenter*, 360 F.3d at 594. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. at 238-39 (internal quotation marks and citation omitted).

The warrant in this case failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit. That affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there. In order to establish probable cause, however, "[t]here must . . . be a 'nexus between the place to be searched and the evidence sought.'" *Carpenter*, 360 F.3d at 594 (quoting *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998)). Thus, the district court correctly ruled that the affidavit did not provide a substantial basis for concluding that there was probable cause to issue the warrant. *See Carpenter*, 360 F.3d at 594 (affidavit that described marijuana field near residence to be searched and road that ran nearby "fall[s] short of establishing required nexus"); *Van Shutters*, 163 F.3d at 336-38 (no probable cause where warrant affidavit failed to state a nexus between the premises and the criminal activity); *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (no probable cause for warrant where affidavit lacked an "evidentiary nexus . . . between the [place to be searched] and the criminal activity"). Indeed, the government has conceded the lack of probable cause both in its reply brief to the district court and on appeal.

The district court nevertheless determined that, although there was no valid basis for issuance of the warrant, it was executed in good-faith reliance by the deputy and therefore did not require the court to exclude the evidence seized, relying upon the Supreme Court's analysis in *Leon*. In that case, working from the premise that the exclusionary rule is a judicially created (as opposed to constitutionally required) remedy for and deterrent to violations of the Fourth Amendment, the Court reasoned that "where [police conduct] was pursued in complete good faith . . . the deterrence rationale loses much of its force." *Leon*, 468 U.S. at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). Therefore, the Court determined, the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *Leon*, 468 U.S. at 918-921. *See also United States v. Savoca*, 761 F.2d 292, 294 n.1 (6th Cir. 1985) (adopting the term "good faith exception" as a "short hand description" for *Leon*'s "reasonable reliance" language).

The *Leon* decision also identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *See Leon,* 468 U.S. at 914-923; *Savoca*, 761 F.2d at 296 (consolidating the last two situations); *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (listing situations three and four as separate considerations).

Affidavits that are "so lacking in indicia of probable cause" have come to be known as "bare bones" affidavits. *See Weaver*, 99 F.3d at 1378; *Van Shutters*, 163 F.3d at 337; *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Such an affidavit contains only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. . . ." *Weaver*, 99 F.3d at 1378. In our recent opinion in *Carpenter*, we adopted the Fourth Circuit's understanding of the "so lacking" language, ruling that the standard by which an affidavit should be judged for purposes of the good faith exception "'is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.'" *Carpenter*, 360 F.3d at 595, (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)). If good faith reliance were judged by the substantial basis standard, we observed, "the exception would be devoid of substance." *Id.*

In the present case, the district court found that the deputy's application was "inadequate to establish probable cause, but . . . [was not] so inadequate as to be deemed a bare bones affidavit," based upon the fact that the deputy had taken the information to a magistrate and was "able to furnish more than what has been deemed bare bones or a mere conclusion. . . ." As a result, the court pronounced the search valid, while at the same time recognizing that the observed controlled narcotics purchases were not connected to the address to be searched; that the deputy's averment that the defendant "will keep controlled substances in his pants pockets and stashes around his home" was "unsupported by any supporting facts"; and that the statement that controlled substances were located at or near the defendant's residence, based on the fact that the confidential informant had observed the controlled substances, did not indicate when or where the observations were made.

There have been several cases in this circuit, "all of which involved questions about the nexus between criminal activity and places, where this Court has found that probable cause did not exist, but that the good faith exception should apply." *Washington*, 380 F.3d at 242 (citing *Carpenter*, *Van Shutters*, *Schultz*, and *Savoca*). The present case cannot be added to this list, because in each of the cases cited, unlike the case at hand, our review turned up some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched.

In *Washington*, the police sought a warrant to search the house of a suspected, but unidentified, drug dealer. Their affidavit stated that the same unidentified person had twice arrived at a controlled buy in a car that was registered to the address; prior to one controlled buy the dealer told the confidential informant that he had to go pick up his car from the mechanic and then, immediately after the phone call, was observed emerging from the residence and getting a ride to a garage where he picked up the same car; and the car was observed parked outside of the residence. *Washington*, 380 F.3d at 243. In *Carpenter*, the affidavit for a warrant to search a residence stated that a field of marijuana plants was growing nearby the house and that there was a road connecting the house to the field. *Carpenter*, 360 F.3d at 593. The court in *Van Shutters* found that, in view of the affidavit's extensive detail describing the place to be searched, the nature of the criminal enterprise in which the defendant was involved, the instrumentalities of that enterprise, and the status of the police investigation, in combination with the statement that the rooms in the residence

"were available to" the defendant and the officer's 17 years of experience as a state highway patrol investigator, "only a police officer with extraordinary legal training would have detected any deficiencies" in the warrant. *Van Shutters*, 163 F.3d at 337. And in *Savoca*, although the affidavit for the warrant did not state the suspect's relation to the motel room the police wished to search or how recently the crimes in which he was a suspect had occurred, it did state that he had in fact been seen entering and was arrested while leaving the room. *Savoca*, 739 F.2d 220, 223; 761 F.2d at 298.

The *Schultz* case presents perhaps the weakest link between criminal activity and the place to be searched. There, the court considered a warrant to search safe deposit boxes based on the following facts alleged to support the warrant: that two independent but unknown informants reported to police that the suspect sold narcotics; that the suspect had prior convictions for possession of marijuana products; that police in Florida had observed the suspect there; that the phone number one informant called to purchase drugs was registered to a woman in whose car the suspect had been issued a traffic citation; that the records for that phone number showed calls to Florida and Jamaica; that cars registered to the suspect were parked in front of the address that corresponded to the phone number; and that the investigating officer, "[b]ased on his training and experience, . . . believe(d) . . . that it is not uncommon for the records, etc., of such [drug] distribution to be maintained in safe deposit boxes." *Schultz*, 14 F.3d at 1096-97. The panel in that case did not indicate explicitly the basis for its determination that the evidence seized was saved from suppression by good faith, except to say that the officer "certainly had probable cause to believe that Schultz had committed a crime [and] although we have held that his 'training and experience' were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the 'so lacking' hurdle." *Schultz*, 14 F.3d at 1098.

Notwithstanding *Schultz*'s stretch of the limits of good faith, in each of the other cases summarized above, the issuing magistrate – as well as the reviewing court – was able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched. In fact, the *Carpenter* decision distinguished the facts in that case, and those in *Van Shutters* and *Schultz* on which it relied for its application of the good faith exception, from the facts in *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988), where "the police officer had obtained a warrant to search a particular residence after submitting . . . an affidavit that failed to provide *any* nexus between the residence and the illegal activity." *Carpenter*, 360 F.3d at 596. It is *Hove* that is most analogous to the present case, rather than the other Sixth Circuit cases.

It could be argued, of course, that *Schultz* permits reliance on an inference to fill in a gap in the affidavit. But in contrast to the single inference drawn by the highly experienced investigator in *Schultz*, which was based on a great number of details set out in the affidavit, filling the gaps in the present case would require a number of inferences, even inferences drawn upon inferences, in order to support objectively reasonable reliance by an officer executing the resulting warrant who was not familiar with the underlying facts. After all, the test for good faith reliance, because it is an objective one, does not permit consideration of the executing officer's state of mind. Indeed, the Supreme Court in *Leon* expressly rejected such an inquiry. *Leon*, 468 U.S. at 922 n.23 ("we . . . eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant"). The Court reasoned that "sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources." *Id.* (internal quotation marks and citation omitted). For this reason, the test is not what the executing officer did believe or even could have believed. Rather, it is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. *See also Helton*, 314 F.3d at 824-825 (evaluating executing officers' conduct in light of what a "reasonable officer" would believe); *Carpenter*, 360

F.3d at 596 ("We therefore conclude that reasonable officers could have believed that the affidavit, as submitted . . . was sufficient to support the issuance of the warrant.").

Here, the investigating officer's affidavit did not indicate where the confidential informant had made "multiple purchases of methamphetamine." It did not even say explicitly that the confidential informant had purchased the narcotics from the suspect. Finally, the statement that the confidential informant had observed "controlled substances at or in the residence or located on the person of James Howard Laughton" does not indicate where that residence was or when these observations were made, raising the possibility that the information was stale. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1988) (reciting variables for measuring staleness and indicating it is "salient" to a probable cause determination). The application simply listed the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton.[1] No reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable.

In reaching its decision, the district court explicitly considered not only what was in the affidavit, but also what other facts were known to the deputy but not included in the affidavit. The court found that the deputy, "if he had sufficient training and experience in being able to communicate the state of his knowledge, would have been able to establish probable cause" and that "there was information within the knowledge of the affiant, if he had been able or chose to state it properly, to establish probable cause." Although we had not spoken to this issue at the time, shortly after the district court's ruling, a panel of this court approved a similar analysis in the initial opinion in *Carpenter*. *United States v. Carpenter*, 317 F.3d 618, 624 (6th Cir. 2003). However, that decision was superceded when the court reconsidered the appeal *en banc* and vacated the original *Carpenter* decision. 360 F.3d at 597 ("we leave for another day the question of whether the search could have been saved under the 'good-faith exception' on the basis that these officers had other information that was not presented to the issuing magistrate, but that would have established probable cause"). We conclude that, given the ruling by the district court, a decision on the issue can no longer be postponed. We further conclude that a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit. Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in that affidavit. This conclusion is dictated not only by logic, but by our own precedent.

In *Weaver*, for example, we reviewed a search that had been conducted pursuant to a warrant that was issued based on a form affidavit. In determining whether the officer's averment constituted a "bare bones" affidavit, we were "concerned exclusively with the statements contained within the affidavit itself." 99 F.3d at 1378 (citing *Whiteley v. Warden*, 401 U.S. 560, 564-565 (1971), and *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973)). Furthermore, the *Leon* decision itself makes clear "that the relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact." *Carpenter*, 360 F.3d at 598 (Gilman, J., concurring). To hold otherwise would clearly perch a reviewing court at the edge of

---

[1] In *Schultz* and *Van Shutters* the court took note of the averring officers' years of experience in determining that they had relied on the warrants in good faith. However, the state trooper in *Van Shutters* had 17 years of experience, 163 F.3d at 337, and the court in *Schultz* noted that although the officer's training and experience could be considered in determining probable cause, it could not "substitute for the lack of evidentiary nexus. . . ." 14 F.3d at 1097.

In this case the deputy had been employed in the sheriff's department for four years. "Training and experience" as a probable cause or good faith variable does not lend itself to a bright line threshold. However, it bears noting that the deputy here had less than one-fourth of the experience of the officer in *Van Shutters*, and the district court commented "[h]e indicates that he received extensive training in all aspects of law enforcement. I suggest except for, perhaps, affidavit drafting." To the extent that the deputy's experience can be considered in weighing the reasonableness of his reliance on the warrant, these two factors suggest it would militate against finding good faith. *But see Washington*, 380 F.3d at 243 (giving weight to averring officer's four and one-half years work in a narcotics division).

the proverbial slippery slope, with courts forced to determine not only how much affiants knew, but also when and from whom they learned it. It would also lead to the very kind of subjectivity that the Supreme Court has repeatedly and explicitly rejected. Given both Supreme Court precedent and our own, we hold that the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant.

## *CONCLUSION*

For the reasons set out above, we conclude that the search warrant executed in this case was not supported by probable cause, that the good faith exception to the exclusionary rule is not applicable to the circumstances surrounding the search, and that the evidence seized should have been suppressed. We therefore REVERSE the judgment of the district court and remand the case for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

RONALD LEE GILMAN, Circuit Judge, dissenting. The district court analyzed the affidavit submitted in support of the search warrant when ruling from the bench on August 26, 2002. It found that the first paragraph of the affidavit did nothing more than recite the affiant's background in drug enforcement. The second paragraph was found deficient because it failed to state *where* the alleged purchases of methamphetamine were made. As to the third paragraph, the court noted that the *source* of the affiant's information was not stated. The fourth and final paragraph was found deficient primarily because it did not say *when* the observations were made. Even the government concedes that these flaws were "sufficient to render the warrant invalid," and I agree.

Despite the deficiencies in the affidavit, however, the district court concluded that the document provided more than "what has been deemed 'bare bones,'" thus causing "this matter to fall, I believe, squarely within the exception set forth in United States vs. Leon." In explaining its ruling, the court reasoned as follows:

> The officers executing the search warrant in this case were acting in reliance on a search warrant which they believed was validly issued. There is nothing on the face of the search warrant or based upon the proceedings leading to the issuance of the search warrant, there is nothing which would lead a reasonable officer to conclude that there was something suspect or inherently defective in the search warrant itself or in the way it was issued.

I agree with the district court's analysis, and disagree with the contrary conclusion by my colleagues. In particular, I believe that the affidavit easily refutes the majority's statements that "the warrant failed to establish any nexus whatsoever between the residence to be searched and the criminal activity attributed to the defendant in the affidavit." (Maj. Op. at 2) The warrant, after all, lists the address to be searched as 1040 Spruce Street. To not link the affidavit's references to "the home" and "the residence" to Laughton and the stated address strikes me as an unwarranted hypertechnicality, especially when evaluating the officer's good-faith belief for *Leon* purposes.

The primary purpose of the "exclusionary rule" is to "instill in . . . investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *United States v. Leon*, 468 U.S. 897, 919 (1984) (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). Where the officer's conduct is objectively reasonable, the "good-faith exception" should apply because "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *Leon*, 468 U.S. at 920 (quoting *Stone v. Powell*, 428 U.S. 465, 539-540 (1976) (White, J., dissenting) (alterations in the original)).

The *Leon* good-faith exception seems to me fully applicable to the case before us. Despite its deficiencies as summarized above, the affidavit's statement of facts was well beyond "bare bones." The officer, moreover, brought the affidavit to the county prosecutor for his approval prior to presenting it to the magistrate. This fact has been recognized as an important piece of evidence demonstrating the officer's good-faith belief in the propriety of the affidavit. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984) (noting that the fact that the detective "prepared an affidavit which was reviewed and approved by the District Attorney" helped demonstrate that "[t]he officers in this case took every step that could reasonably be expected of them"); *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002) (concluding that the fact that the investigating agent "consulted

with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith, like the law enforcement officer in *Leon* . . .").

   In sum, I believe that the district court was correct in denying Laughton's motion to suppress. I would therefore affirm the judgment of the district court.