NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0761n.06

No. 10-1593

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**_Jul 16, 2012_**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

LARRY MELL MCCREARY,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

_____/

Before:     MARTIN, MOORE, and COOK, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. This is a direct appeal of a criminal conviction and sentence. After a three-day trial, a jury found Larry Mell McCreary guilty of being a felon in possession of a firearm. The conviction resulted from the discovery of a firearm during the execution of a search warrant by the Detroit Police Department. McCreary argues that the firearm should not have been admitted at trial because the affidavit submitted in support of the search warrant contained knowingly or recklessly false statements, in violation of his Fourth Amendment rights. McCreary also argues that the district court erred in applying a four-level sentencing enhancement for possession of a firearm in connection with a drug trafficking offense. For the following reasons, the judgment of the district court is **AFFIRMED**.

I.

On April 2, 2009, the Detroit Police Department executed a search warrant at 5621 Rogers Street, a small, two-bedroom house. Two police officers, Adrian Lawrence and his sergeant, Manual Gutierrez, along with U.S. Immigration and Customs Enforcement agents, were conducting surveillance on an unrelated matter in the vicinity of 5621 Rogers Street. The officers—operating undercover—parked about a block and a half from 5621 Rogers Street. From their location, the officers could see down an alley along the west side of the house. In the affidavit Lawrence prepared to obtain a search warrant later that day, he described the events he witnessed that gave rise to his suspicion that 5621 Rogers Street was being used for narcotics sales:

> On April 2, 2009, affiant set up fixed surveillance at 5621 Rogers, while at the location affiant observed a Mexican male walk up to the side of the location on the alley side of the dwelling and reach through a vent and place what appeared to be money and then grab a small item out of the vent and walk away. Affiant then observed a black female walk to the same side of the dwelling and observed the same transaction. While continuing fixed surveillance affiant observed a white female conduct the same [transaction] as the other persons. The white female (name and dob given upon request), who was stopped and questioned [about] the nature of being a[t] 5621 Rogers and stated that they were out of cocaine but have heroin and marijuana. Based on affiant's experience in drug trafficking and sale affiant believes drugs are being sold at this location. Affiant also found that this location at 5621 Rogers has a narcotics complaint.

At trial, Lawrence testified that he observed the man identified in his affidavit walk to the back corner of the house and stand facing the house. The man "st[ood] there and he was pointing at something, and he reached for something." Lawrence testified that, based on his experience and training, Lawrence believed the man was buying narcotics. Lawrence testified that he "couldn't see what [the man] had in his hand," but it appeared he was reaching for something. Lawrence testified

that he did not actually see a hand-to-hand exchange but that he saw "[w]hat [he] believe[s] was a drug transaction."

After obtaining a search warrant, officers attempted to enter 5621 Rogers Street. The officers made several unsuccessful attempts to enter before McCreary let them into the apartment. Upon entry, the officers found both the front and back doors barricaded. McCreary was the only individual in the house when the officers entered, and during their surveillance, the officers had not seen anyone enter or leave the house. In the kitchen, the officers found a small digital scale and small plastic bags. In the bathroom next to the kitchen, the officers located a hole inside a closet that connected to the vent they had viewed outside. There was water on the floor around the toilet. In one of the two bedrooms, the officers seized a loaded twelve-gauge shotgun and a box of .357 caliber ammunition. The officers found neither drugs nor money in the house. There were no documents linking McCreary to the address. According to Gutierrez, as McCreary was being arrested, McCreary asked if he could retrieve his coat from "his bedroom." Accompanied by the officers, McCreary retrieved his coat where the gun had been found.

Before trial, McCreary filed a motion to suppress the shotgun, arguing that the search warrant did not support a finding of probable cause to search the house. The district court assumed, without deciding, that the warrant lacked probable cause but nonetheless denied the motion to suppress, finding that the gun was admissible based on the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984). McCreary argued that the good faith exception to the exclusionary rule should not apply because the affidavit was "bare bones." The

district court found that the affidavit was not "bare bones" and that the good faith exception to the exclusionary rule applied.

At trial, the parties stipulated that McCreary had previously been convicted of a felony offense and that the shotgun affected interstate commerce because it had crossed state lines. The sole issue for the jury was whether McCreary constructively possessed the shotgun. At the close of the government's evidence, McCreary moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion and McCreary was convicted. The district court sentenced McCreary to four years and three months' imprisonment.

After his conviction, McCreary moved for a new trial or a judgment notwithstanding the verdict pursuant to Rules 33 and Rule 29(b), respectively. Citing *Franks v. Delaware*, 438 U.S. 154, 164 (1978), McCreary argued that Lawrence's trial testimony revealed that the warrant affidavit included knowingly or recklessly false statements and that the district court should not have considered the affidavit in determining whether the search warrant was supported by probable cause. In the alternative, he asked the district court to hold a *Franks* hearing to assess the falsity of the affidavit. A *Franks* hearing would allow McCreary to challenge the truthfulness of Lawrence's statements in the underlying search warrant affidavit. *See United States v. Stuart*, 507 F.3d 391, 394 (6th Cir. 2007). In essence, McCreary asked the district court to reassess its ruling on his pretrial motion to suppress the shotgun. The district court ruled that McCreary had waived his *Franks* argument by failing to raise it in the pretrial suppression motion. The district court found in the alternative that Lawrence's trial testimony was "not necessarily inconsistent" with his affidavit and

McCreary had failed to demonstrate that the statements in the affidavit were made with knowledge of their falsity or with reckless disregard for the truth.

## II.

### A.      Excusing McCreary's Waived *Franks* Claim

According to McCreary, the shotgun should have been suppressed because inconsistencies between Lawrence's trial testimony and the warrant affidavit demonstrate that the affidavit included statements made with knowing falsity and reckless disregard for the truth. McCreary concedes that he waived this *Franks* argument by not raising it in his pretrial motion to suppress, but argues that he has demonstrated "good cause" to excuse the waiver. *See* Fed. R. Crim. P. 12(e). McCreary argues that the district court erred in its denial of his motion for a new trial by finding that McCreary had not demonstrated "good cause" to excuse the waiver of his *Franks* claim, and he asks us to vacate his conviction or remand his case to the district court to conduct a full *Franks* hearing. "Under Fed. R. Crim. P. 12(e), a party 'waives' any pretrial defense or objection that he or she did not raise before the trial court's pretrial motion deadline. The rule permits the court to grant relief from the waiver only for 'good cause.'" *United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006). McCreary argues that the government's failure to disclose the discrepancies between the affidavit and Lawrence's testimonial recollection of events was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and constitutes "good cause" for McCreary's failure to raise the falsity argument before trial. The government argues that McCreary waived his *Brady*-violation claim because he failed to raise this claim before the district court; instead McCreary argued only that the alleged "falsehood was not revealed until trial." *Lopez-Medina*, 461 F.3d at 739 ("Even when a party has

brought a pretrial suppression motion . . . any new suppression arguments raised for the first time on appeal that were not contained in the original suppression motion will be deemed waived under Rule 12(e).").

Furthermore, any pretrial failure by the government to disclose Lawrence's verbal recollection of the events does not amount to "good cause" that would excuse McCreary's waiver of the *Franks* claim. "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion. At a minimum, it requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010). While McCreary could not have known exactly what the officers saw during their surveillance of the house, the doors to 5621 Rogers Street were barricaded and the only outlet to the outside that was open at the time was the vent in the bathroom wall. McCreary, as the sole occupant of 5621 Rogers Street at the time, would have known whether or not money and drugs were exchanged though the vent in the bathroom wall. Thus, any lack of disclosure by the government of discrepancies in Lawrence's story would not have prevented McCreary from challenging the veracity of the affidavit pretrial, in compliance with Federal Rule of Criminal Procedure 12(e).

In the alternative, McCreary argues that ineffective assistance of counsel constitutes "good cause" to excuse waiver. In essence, McCreary argues that if his knowledge alone was a basis to challenge the veracity of Lawrence's affidavit, then a reasonable defense attorney would have raised the falsity issue in the pretrial motion to suppress. "Except in rare circumstances," we do not review ineffective assistance of counsel claims on direct appeal because "claims of ineffective assistance

must be addressed in the first instance by a district court pursuant to a claim under 28 U.S.C. § 2255." *United States v. Gunter*, 620 F.3d 642, 643 n.1 (6th Cir. 2010). The record is not sufficiently developed—there has been no evidentiary hearing and no testimony by McCreary, his former counsel, or by any other witnesses—to address McCreary's ineffective assistance of counsel claim on direct appeal. *See United States v. Walden*, 625 F.3d at 967 ("[A] defendant cannot typically raise claims of ineffective assistance of counsel on direct appeal because the record is not developed for the purpose of litigating an ineffective assistance claim and is often incomplete."). Because we conclude that McCreary's ineffective assistance of counsel claim is not ripe for review, McCreary "cannot, at this point, demonstrate 'good cause' to excuse his waiver under Rule 12(e)." *Lopez-Medina*, 461 F.3d at 739. Because McCreary has not come forward with good cause to excuse his waiver, we affirm the district court's denial of his post-trial motions based on waiver.

B.     Admission of the Shotgun as Plain Error

McCreary next argues that regardless of whether his waiver is excused, the admission of the shotgun was plain error warranting reversal. According to McCreary, the admission of the shotgun was plain error because the warrant affidavit that led the officers to recover the shotgun contained knowingly or recklessly false information. The government argues that plain error review is not appropriate because McCreary waived his *Franks* challenge. We have held that "we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir. 1990). On the other hand, we have also "applied Rule 52(b)'s plain error review to new suppression arguments raised for the first time on appeal after a defendant's original suppression arguments proved unsuccessful at the trial court

level" first. *Lopez-Medina*, 461 F.3d at 739 (citing *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995)); *see United States v. Deitz*, 577 F.3d 672, 687 (6th Cir. 2009) (comparing prior cases). We need not decide whether or not plain error review is precluded by waiver to resolve this case because "[r]egardless of whether a Rule 12(e) waiver precludes plain error review under Rule 52(b)," *Lopez-Medina*, 461 F.3d at 739, McCreary has failed to demonstrate plain error based on the admission of the shotgun because McCreary has not shown that the affidavit contained knowingly or recklessly false information. "An error is plain when it is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings." *Id.* This Court uses a two-part test to evaluate claims of false statements contained in an affidavit: "(1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant." *United States v. Mick*, 263 F.3d 553, 563-64 (6th Cir. 2001) (quoting *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998)). Where an affidavit contains knowing or reckless falsities, "the *Leon* good faith exception does not apply to save" it. *United States v. West*, 520 F.3d 604, 612 (6th Cir. 2008).

McCreary argues that the information in the affidavit was proven to be false by the testimony at trial, and that the district court erred by wrongfully applying the *Leon* good faith exception to the affidavit because it included knowing or reckless falsities. McCreary has not shown that the affidavit contained knowingly or recklessly false information because he has not shown that the trial testimony is necessarily inconsistent with the affidavit. In his affidavit, Lawrence stated that he observed an individual "reach through a vent and place what appeared to be money and then grab

a small item out of the vent and walk away." Although Lawrence testified that he did not see drugs or witness a hand-to-hand exchange, he did testify that he saw three individuals "reach[] for something" while standing in the back corner of a house, conducting what appeared to him to be a narcotics transaction. The details in the affidavit about Lawrence's observations do not exactly match what Lawrence stated at trial, however Lawrence's trial testimony is not inconsistent with his affidavit such that it would provide the basis for a *Franks* hearing, much less demonstrate directly that the affidavit included statements that were knowingly or recklessly false. *See Stuart*, 507 F.3d at 396 ("[I]n order to obtain a hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit." (internal quotation marks omitted)). Indeed, "[m]inor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion." *United States v. Elkins*, 300 F.3d 638, 649, 650 (6th Cir. 2002) ("Warrant language may fall short of technical exactitude without necessarily violating the materiality and scienter requirements of *Franks*."); *see also Mick*, 263 F.3d at 562-64 (finding that five separate misstatements of various kinds in a warrant affidavit do not rise to the level of deliberate or reckless misstatements as required by *Franks*). Because McCreary has, at most, demonstrated only minor discrepancies and has not demonstrated that the affidavit contained knowingly or recklessly false information, he cannot demonstrate falsity constituting any error—much less plain error—in the admission of the shotgun.

    C.    Pretrial Application of *Leon* Good Faith Exception

McCreary argues that it was error for the district court to apply the good faith exception to Lawrence's affidavit because it was a "bare bones" affidavit "so lacking in indicia of probable cause" that a belief in the existence of probable cause is objectively unreasonable. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). In reviewing the denial of a pretrial motion to suppress evidence, we review findings of fact for clear error and conclusions of law de novo. *Id.* at 747. Under *Leon*, "[c]ourts should not . . . suppress evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Leon*, 468 U.S. 897, 922 (1984)) (internal quotation marks omitted). The good-faith exception established in *Leon* not apply "where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a 'bare bones' affidavit." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). An affidavit is "bare bones" if it "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). We review the decision of whether or not to apply the good faith exception de novo. *Washington*, 380 F.3d at 241 (citing *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993)).

McCreary analogizes his case to *Laughton*, where this Court found that a summary of the affiant's law enforcement experience and two "acontextual allegations" that the defendant kept controlled substances on his body and in his house were insufficient to allow a reasonable officer

to believe that the affidavit supported probable cause. 409 F.3d at 751. In *Laughton*, the warrant

"failed to make any connection between the residence to be searched and the facts of criminal

activity that the officer set out in his affidavit. That affidavit also failed to indicate any connection

between the defendant and the address given or between the defendant and any of the criminal

activity that occurred there." *Id.* at 747.

Contrary to McCreary's argument, the observations articulated in the affidavit in this case

are more specific, concrete, and clear than those in *Laughton.* Here the warrant affidavit included

observations of suspicious transactions at the side of 5621 Rogers Street, a woman's statement about

the presence of heroin and marijuana in the house, and the fact that there had been a previous

narcotics complaint at the residence. The district court did not err in applying the good faith

exception in denying McCreary's motion to suppress. *See United States v. Kincaide*, 145 F.3d 771,

779 (6th Cir. 1998) (upholding a magistrate's determination of probable cause where the magistrate

reviewed affidavits providing a substantial basis for concluding that a search will uncover evidence

of wrongdoing).

D.      Appeal of Sentence as Procedurally Unreasonable

McCreary argues that the district court improperly enhanced his sentence under United States

Sentencing Guideline section 2K2.1(b)(6), for possession of a weapon in connection with another

felony offense. McCreary seeks re-sentencing without the four-level enhancement. We review a

district court's factual findings to support a guideline enhancement under section 2K2.1(b)(6) for

clear error and "accord due deference to the district court's determination that the firearm was used

or possessed in connection with the other felony." *United States v. Taylor*, 648 F.3d 417, 431 (6th

Cir. 2011) (internal quotation marks omitted); *see also United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001). A gun is used "in connection with" another felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." § 2k2.1(b)(6), n. 14(A). Under Application Note 14(B)(ii), the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." The district court determined that McCreary was "knowingly and willfully engaged in drug distribution activity, at least to the point of holding down the fort while it was going to be resupplied with materials," and applied the enhancement. According to McCreary, the enhancement should not apply because the gun was not found "in close proximity" to any alleged "drugs, drug-manufacturing materials, or drug paraphernalia."

"This court has articulated the 'fortress theory' as a means of satisfying [a subsection of section 2K2.1(b)], which applies where a defendant has used a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct." *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006); *see also Ennenga*, 263 F.3d at 503. Though no drugs or drug-manufacturing materials were found at 5621 Rogers Street, a digital scale with trace amounts of green leaf material and white powder was present in the kitchen. Additionally, McCreary had barricaded himself alone inside the house and at least three different individuals were observed reaching for something near a dryer vent on the side of the house. Upon leaving the area, one individual was found to have drugs on his person and another individual told the police about drug activity at the house. The evidence of individuals approaching the house to purchase drugs, the presence of the digital scale in an empty home without food or other domestic items, the barricaded

entrances, and the gun and ammunition in the bedroom, steps away from the front door, constitute sufficient evidence from which to deduce that the house was being used as a "fortress" for drug activity. *See Ennenga*, 263 F.3d at 504 (finding that the use of weapons and an alarm system support that the house was a "fortress," even where firearm and drug evidence were found in different locations within the house)*; see also United States v. Heighton*, 272 F. App'x 469, 472 (6th Cir. 2008) (applying section 2K2.1(b)(6) enhancement where methamphetamine ingredients and drug scale, but no drugs, were found in a house secured by firearms and surveillance system). The district court did not err in enhancing McCreary's sentence under United States Sentencing Guideline section 2K2.1(b)(6).

III.

Accordingly, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring, and concurring in the judgment of conviction.** I agree with the majority that, even if we were to review the district court's rejection of McCreary's *Franks* claim for plain error, that claim would fail. I write separately because I believe that the greater obstacle to McCreary's claim is the second, rather than the first, prong of the *Franks* analysis.

The discrepancies between Officer Lawrence's statements in the affidavit and his testimony regarding what he saw occurring at the house on Rogers Street are somewhat concerning. *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). I nonetheless concur in the judgment because, assuming that the statements were knowingly or recklessly false, I believe that McCreary's *Franks* claim fails under the second prong of the analysis. Even if the challenged statement in the affidavit was more than a minor or technical discrepancy from Lawrence's testimony, it was most likely an inconsequential discrepancy. I believe that, even stripped of the statement that three individuals placed money in the vent and retrieved a small item, the affidavit supports a finding of probable cause to issue a warrant. Lawrence observed odd conduct that, based on his experience, resembled a drug transaction, one purported customer informed the officers that heroin and marijuana were available at the house, and a narcotics complaint had been lodged involving the house. *See United States v. Lattner*, 385 F.3d 947, 952–53 (6th Cir. 2004); *United States v. Rudolph*, No. 93-2392, 1994 WL 592932, at *5 (6th Cir. Oct. 27, 1994) (unpublished opinion); *see also United States v. Funches*, 327 F.3d 582, 586–87 (7th Cir. 2003). Because I believe that the warrant was sufficient, the good-faith exception is not necessary to support the validity of the search.