NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0214n.06

Case No. 23-5778

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE EASTERN DISTRICT OF</td></tr>
<tr><td>ADAM CHILDERS,</td><td>)</td><td>KENTUCKY</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
May 10, 2024
KELLY L. STEPHENS, Clerk

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

**PER CURIAM.** A jury convicted Adam Childers of distributing and possessing child pornography. He now appeals the district court's denial of his motion to suppress evidence found by law enforcement at his home while executing a search warrant. He also appeals the district court's jury instruction on deliberate ignorance and its denial of his motion for a new trial based on alleged juror misconduct. For the reasons explained below, we affirm.

**I.**

In October 2020, Kentucky-based law enforcement officers began investigating a particular Internet Protocol ("IP") address—198.37.227.33. The Ashland Police Department ("APD") uncovered this address through one of its child sex crime investigators, Lieutenant Adam Daniels. According to Lt. Daniels, he learned IP address 198.37.227.33 was potentially linked to a device downloading large amounts of child pornography. He gained this information through what he dubbed a "leads tool."

Lt. Daniels described how the APD utilizes the leads tool to investigate individual IP addresses. He explained that the tool collected data using BitTorrent, a decentralized peer-to-peer communications protocol for distributing and downloading files over the internet. By utilizing a unique identifier known as a "hash value," the leads tool scanned shared or downloaded BitTorrent files and compared them to previously confirmed images of child pornography. If the hash value of a particular file matched the hash value of material already known to depict child sexual abuse, then the leads tool would flag the IP address linked to that activity.

The leads tool flagged IP address 198.37.227.33. Lt. Daniels testified that the tool allowed him to see if any other investigators noticed the activity linked to this IP address, eventually leading him to Detective John Sims with the Kentucky State Police ("KSP"). Det. Sims was using investigative software that seeks out and attempts to download child pornography from other people—or "peers"—who are sharing that content via a particular BitTorrent application. Through this process, Det. Sims downloaded several files containing child pornography from a peer linked to IP address 198.37.227.33 who was using the BitTorrent application FrostWire. Lt. Daniels acquired these files from Det. Sims, reviewed them, and confirmed that they contained child pornography.

Next, Lt. Daniels obtained a subpoena that compelled Charter Communications—the internet service provider that assigned the IP address at issue—to reveal the owner of this address. On October 23, 2020, Charter Communications responded, identifying Childers as the owner with a particular billing address in Ashland, Kentucky.

Three days later, APD Det. Angel Holmes obtained a search warrant for Childers's home. The supporting affidavit recounted most of the facts outlined above. And it explained that Det. Holmes confirmed "through dispatch, DMV records and utility records" that the billing address

reported by Charter Communications was, in fact, Childers's residence. R. 30-1, PageID 93. APD officers executed the search warrant later that day and discovered a "massive" child pornography collection stored across a computer, multiple hard drives, discs, binders, and magazines. R. 136, PageID 3050.

Following this search, a federal grand jury indicted Childers for: (1) distributing child pornography in violation of 18 U.S.C. § 2252(a)(2); and (2) possessing the same in violation of 18 U.S.C. § 2252(a)(4)(B). Childers moved to suppress the evidence obtained from his house. The district court denied his motion.

Childers proceeded to trial. Before giving their closing arguments, the parties discussed with the district court their proposed jury instructions. Childers objected to the court giving the government's proposed deliberate-ignorance instruction. The district court overruled the objection, finding that the evidence supported such an instruction. In the end, the jury convicted Childers of both charges.

About three weeks later, Childers moved for a new trial based on alleged juror misconduct. As Childers saw it, he was deprived of a fair trial because one juror, Juror 159, withheld material information during voir dire. The jury venire was asked a litany of questions, including two that are relevant here. First, the district court asked: "Have you or an immediate family member . . . ever been accused of a crime?" R. 75, PageID 388. Second, the government asked: "Does anybody have any friends or family members who have been convicted of a child sex offense?" *Id.* at 409. Juror 159 remained silent in response to both questions. After Juror 159 was selected as a juror, deliberated, and participated in the unanimous verdict finding Childers guilty, it later came to light that Juror 159's son had pleaded guilty in state court to human trafficking of a minor

and unlawful transaction with a minor. The district court conducted an evidentiary hearing on Childers's motion and ultimately denied it.

After the district court sentenced Childers, this timely appeal followed.

**II.**

Childers raises three challenges to his convictions: (1) the district court erred in denying his motion to suppress the search of his residence; (2) the district court erred by instructing the jury on deliberate ignorance; and (3) the district court erred by denying his motion for new trial based on juror misconduct. We address each argument in turn.

**A.**

Childers first challenges the district court's denial of his motion to suppress the evidence that APD officers discovered at his home. When considering a district court's decision on a motion to suppress evidence, we review findings of fact for clear error and conclusions of law de novo. *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022). "When a district court has denied a motion to suppress," as the district court did here, "we consider the evidence in the light most favorable to the government." *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

The Fourth Amendment protects individuals "against unreasonable searches and seizures," especially within the home. U.S. Const. amend. IV; *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016). So police must typically obtain, through an affidavit, a warrant based on "a judicial determination of probable cause before entering the home." *Brown*, 828 F.3d at 381 (quotation omitted). We have said that this requires a "nexus" connecting the place the government wants to search and the evidence it wants to seize. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quotation omitted). To establish probable cause, moreover, the affidavit must

not be based on "stale" information. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quotation omitted).

Childers argues that the district court got two things wrong when it denied his motion to suppress. First, he contends that the district court erred by finding that the search warrant was supported by probable cause. Second, he argues that the district court erred when it found that the information in the affidavit supporting the warrant was not stale. We reject Childers's arguments because, even if the search warrant was invalid, the good-faith exception operates to save the search.

Under the "exclusionary rule," courts typically exclude evidence obtained in violation of the Fourth Amendment. *United States v. Rice*, 478 F.3d 704, 711 (6th Cir. 2007). This rule is meant to deter police misconduct. *See United States v. Leon*, 468 U.S. 897, 906–07 (1984). Still, the Supreme Court has "recognized a good-faith exception to the exclusionary rule that applies when 'reliable physical evidence [is] seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate[.]'" *United States v. Lewis*, 81 F.4th 640, 647 (6th Cir. 2023) (alterations in original) (quoting *Leon*, 468 U.S. at 913). This exception makes sense—"no additional deterrent effect" comes from excluding evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (quoting *Leon*, 468 U.S. at 905).

That said, there are four well-defined circumstances under which the good-faith exception will not apply. Relevant here is "the third scenario: when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 923). We call these "bare bones" affidavits. *Id.* (quotation omitted).

Bare-bones affidavits are conclusory. They assert "only the affiant's belief that probable cause existed" or "a mere guess that contraband or evidence of a crime would be found." *Id.* (quotations omitted). They are, moreover, "completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." *Id.* (internal quotation marks and citations omitted). Yet "an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched." *Id.* at 496–97 (quoting *Carpenter*, 360 F.3d at 596). Official reliance on an affidavit is reasonable when a reviewing court can point to "some connection, regardless of how remote it may have been" or "some modicum of evidence, however slight . . . between the criminal activity at issue and the place to be searched[.]" *Id.* (emphasis omitted) (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

The affidavit here was not bare bones. It provided that APD officers learned IP address 198.37.227.33 was possibly "downloading images and videos containing child pornography" through peer-to-peer file sharing programs. R. 30-1, PageID 93. The affidavit also provided that, with Det. Sims's help, Lt. Daniels reviewed "over 132 files" shared by this IP address and confirmed that those files contained child pornography. *Id.* And it established that APD officers tied IP address 198.37.227.33 to Childers by confirming, through Charter Communications, that he was its subscriber. The affidavit also described how APD officers independently confirmed where Childers lived via "dispatch, DMV records and utility records." *Id.* Finally, it requested to search for internet-connected digital communications devices that would allow Childers to carry out the suspected child pornography crimes.

This establishes a "minimally sufficient nexus" between Childers's suspicious internet activity and his Ashland, Kentucky, home. *See White*, 874 F.3d at 497. The affidavit identified

the method through which APD suspected a specific IP address was sharing and downloading child pornography. It outlined Lt. Daniels's additional investigative steps, including how he reviewed known child pornography downloads from that same IP address. And using that IP address, Lt. Daniels "identified the precise address at which" child pornography was being downloaded and shared, "a pertinent factor in establishing a minimal nexus, to say nothing of probable cause." *Id.* (citing *Carpenter*, 360 F.3d at 594).

The nature of child pornography crimes confirms this conclusion. Given that "child pornography crimes are generally carried out in the secrecy of the home," *United States v. Kinison*, 710 F.3d 678, 684 (6th Cir. 2013) (internal quotation marks omitted), it was reasonable for APD officers to believe that the child pornography distribution linked to Childers's IP address was connected to his residence. True, the affidavit relied in part on the child pornography Det. Sims downloaded from Childers's IP address on October 5 and 6, 2020, and the search warrant was not signed and executed until October 26. But the affidavit also says that on October 20, APD officers learned Childers's IP address "had been flagged as downloading over 3000 files of interest." R. 30-1, PageID 93. Three days later, Lt. Daniels reviewed over 132 files downloaded by Det. Sims to confirm they depicted "obvious juvenile males and females engaged in sexual activity." *Id.* It was reasonable for the executing officers to suspect that child pornography was among the more than 3,000 files the APD learned Childers was downloading only seven days prior. *Cf. United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) ("[E]vidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material."). This conclusion is further supported by all the evidence indicating Childers lived in the same house for the entire period in question. And at any rate, given the nature of child-pornography possession, a 21-day gap between first

receiving notice of Childers's possible distribution of child pornography and securing the search warrant does not make the search warrant stale. *See United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) (collecting circuit precedent approving seven-, nine-, thirteen-, and sixteen-month delays between obtaining evidence of child pornography and securing a search warrant).

At bottom, the officers here acted reasonably by relying on the magistrate's determination. "Far from being completely devoid of facts or consisting solely of suspicions, beliefs, or conclusions," the affidavit here "contains sufficient factual content that, when taken together and read in a common-sense, practical manner, establishes some connection, some minimally sufficient nexus," between suspected child pornography crimes and Childers's residence. *White*, 874 F.3d at 498 (emphasis, internal quotation marks, and citations omitted); *see also Kinison*, 710 F.3d at 686. Without any "culpable police conduct to deter here," the good-faith exception applies. *See Kinison*, 710 F.3d at 687.

**B.**

Childers also challenges the district court's denial of his motion for a new trial based on Juror 159's alleged failure to disclose information during voir dire. This decision "is reversible only for either an abuse of discretion . . . or a clear error of law in the exercise of this discretion." *United States v. Solorio*, 337 F.3d 580, 595 (6th Cir. 2003) (quoting *Zerka v. Green*, 49 F.3d 1181, 1184 (6th Cir. 1995)). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (quotation omitted).

The Sixth Amendment guarantees criminal defendants the right to a trial "by an impartial jury." U.S. Const. amend. VI. Relevant here, an impartial jury means a jury where jurors are not

biased against the defendant. District courts use the voir dire process to ferret out potentially biased jurors. "The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004). But the process works only if prospective jurors respond truthfully to the questions posed to them during voir dire.

Sometimes, a prospective juror's nondisclosure during voir dire amounts to a Sixth Amendment violation that warrants a new trial. To obtain a new trial based on a juror's nondisclosure, "a defendant must show that (1) the juror 'failed to answer honestly a material question on voir dire,' and (2) 'a correct response would have provided a valid basis for a challenge for cause.'" *English v. Berghuis*, 900 F.3d 804, 813 (6th Cir. 2018) (emphasis removed) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). The district court found that Juror 159's failure to disclose his son's prior conviction was material and the parties do not dispute this. So we focus on the second prong.

Whether Juror 159's omission was intentional or unintentional guides our analysis. If Juror 159 intentionally failed to disclose his son's conviction in response to questioning, we may infer that the juror held bias against Childers. *Id.* "[W]here the omission was unintentional," Childers "must show 'actual bias.'" *Id.* (quoting *Zerka*, 49 F.3d at 1186). Actual bias, or "bias in fact," is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010) (quoting *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001)).

The district court found that Juror 159's omission was not intentional. At the evidentiary hearing on Childers's motion for a new trial, Juror 159 testified that he did not hear the district court's question as he was not wearing his hearing aids that day. Counsel for the government, however, was standing closer to the prospective jurors when she asked her question, so Juror 159

testified that he heard that one.  Still, Juror 159 believed the question did not apply to him because he did not think his son's human-trafficking and transacting-with-a-minor convictions were sex offenses per se.  In fact, Juror 159 testified that he consulted with his son's prior counsel in advance of the evidentiary hearing, yet he still did not think his son's convictions were sex offenses.  Based on this testimony, the district court found that Juror 159's failure to respond was unintentional.

In making this finding, the district court did not clearly err or otherwise abuse its discretion. *See Cole*, 839 F.3d at 540.  It used the appropriate legal standard to reach the conclusion that Juror 159 did not believe the government's question applied to him.  And this conclusion was reasonable considering Juror 159's testimony.  After his son's arrest, Juror 159 posted his bail.  Apparently, his son had to wear an ankle bracelet while out on bail but, prior to his conviction, Juror 159's son "cut the ankle bracelet off."  R. 83, PageID 508.  Since then, Juror 159 explained that he had not spoken with his son and therefore was not aware of his son's charges or convictions.  Thus, to the extent Juror 159 omitted material information, he did so unintentionally.  Therefore, Childers needed to show that Juror 159 was actually biased against him.

Childers failed to make that showing.  At the evidentiary hearing, Juror 159 testified more than once that he had no bias against Childers and that he based his guilty verdict on the evidence presented at trial.  Following the hearing, Childers filed a supplemental brief stating that he did not contend "that Juror 159 held some personal animosity toward him," nor did he argue "that Juror 159 wanted to be on the jury solely to convict him."  R. 84, PageID 534.  The district court noted that Childers "did not challenge two prospective jurors who disclosed having a family member accused of a crime and a nephew who had been convicted of a child pornography offense." R. 88, PageID 558–59.  Childers, instead, objected when the government "challenged these jurors for cause," and he provided the district court with "no reason to believe" he "would have treated

Juror 159 differently." *Id.* at 559. Consequently, Childers failed to prove that Juror 159 held actual bias against him.

Without proof of Juror 159's bias, there was no "basis for a challenge for cause, and thus no infringement of [Childers's] right to a fair trial." *Zerka*, 49 F.3d at 1187. And the district court sufficiently investigated possible juror bias by conducting an evidentiary hearing, questioning Juror 159, and allowing the parties to brief the issues. *See id.* Considering the "district court's eminently reasonable conclusions" and Childers's lack of evidence, the district court did not abuse its discretion or make a clear error of law in denying Childers's motion for new trial. *See id.*

**C.**

Finally, Childers argues that the district court erred by giving the jury a deliberate-ignorance instruction over his objections. As he sees it, the government's evidence at trial did not call for that instruction. But even if the district court gave the deliberate-ignorance instruction in error, that error was harmless.

A distinct harmless-error test applies to Childers's argument. This test stems from our presumption that juries find defendants guilty based solely on valid, evidence-backed theories. *United States v. Agrawal*, 97 F.4th 421, 434 (6th Cir. 2024) (citing *Griffin v. United States*, 502 U.S. 46, 59–60 (1991)). And so, "[w]hen a district court gives a deliberate ignorance instruction that does not misstate the law but is unsupported by sufficient evidence, it is at most harmless error" if "there is sufficient evidence of the defendant's actual knowledge to support a conviction." *United States v. Matthews*, 31 F.4th 436, 452 (6th Cir. 2022) (quotation omitted).

The jury received extensive evidence that Childers knew he was both possessing and distributing child pornography via the internet. For example, Lt. Daniels and Det. Sims testified to the circumstances that led the APD to investigate Childers's IP address and ultimately execute

a search warrant at his home. Lt. Daniels explained how that search uncovered a massive volume of child pornography stored across digital and printed mediums that Childers had collected over several decades.

The forensic examination of Childers's computer also suggests its user knew child pornography was being downloaded and shared. That examination linked IP address 198.37.227.33 to Childers's computer and uncovered FrostWire torrent software installed on that machine. During Lt. Daniels's examination of the peer-to-peer activity on that computer, he discovered that files containing child pornography were actively downloading through FrostWire when the APD executed the search warrant. Lt. Daniels also explained how, through a series of intentional choices made during the software download and set-up process, Childers chose to share with other FrostWire users several computer folders containing child pornography.

Lt. Daniels further testified about his examination of seven hard drives discovered by APD at Childers's home. All seven contained child pornography and had, at one point, been used on Childers's computer. Lt. Daniels's review of these hard drives also revealed an intricately organized collection of files containing child pornography, at least some of which were downloaded through a BitTorrent application such as FrostWire. And because, according to Det. Sims, FrostWire users like Childers typically share the content they download, the hard drives also provided evidence from which a jury could infer Childers's knowledge.

Considering this, any error the district court made in instructing the jury on deliberate ignorance was harmless because the evidence shows that Childers knowingly possessed and distributed child pornography. *See Matthews*, 31 F.4th at 452. Moreover, Childers testified that he had no idea how he came to possess such a large and organized collection of child pornography. In addition to denying that he knew anything about computers or file-sharing programs—despite

his decades of experience with them—he suggested that his extensive and well-organized collection of child pornography came from files he blindly downloaded from computers acquired from flea markets and yard sales. This satisfies the two-part test for the deliberate-ignorance jury instruction, which "is appropriate when: (1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance." *United States v. Mitchell*, 681 F.3d 867, 877 (6th Cir. 2012). Regardless of whether the instruction was harmless error or not error at all, Childers's challenge fails.

## III.

For the reasons above, we AFFIRM.