NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0061n.06

Case No.16-4321

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br>Feb 05, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ARIAN O'CONNOR, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: MOORE, WHITE and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** A jury convicted Defendant-Appellant Arian O'Connor ("O'Connor") of one count of felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At trial, O'Connor moved to suppress evidence, alleging that the search warrant affidavit in question did not establish probable cause. The district court denied the motion. On appeal, O'Connor challenges that denial, and challenges the sufficiency of evidence for his conviction. For the reasons set forth below, we affirm the district court's order denying O'Connor's motion to suppress, and affirm his conviction and sentence.

## I.

On August 11, 2015, the Youngstown (Ohio) Police Department ("YPD") received a 911 call from Lisa Ashford ("Ashford") reporting that a man and a woman were attempting to

break into the home Ashford shared with Ronald Scott ("Scott") at 495 Sunshine Avenue, Youngstown, Ohio. Ashford described a man holding a black short-barreled shotgun with a pistol grip, and stated that the man and woman were driving a gray 2014 Ford Focus with Florida license plate CHY-P34 ("Ford Focus"). Ashford subsequently identified the male intruder as O'Connor. **R. 41-1: Search Warrant Affidavit, PageID# 166 ¶¶ 3, 5-7.** O'Connor had rented the vehicle from Enterprise Car Rental the previous day. *Id.***, PageID# 166 ¶ 4.**

As O'Connor and his girlfriend, Jennifer Price ("Price"), attempted to break into the house, Ashford told Scott to stay inside because O'Connor was armed, and warned O'Connor and Price that she was going to call the police. O'Connor and Price fled in the Ford Focus. *Id.***, Page ID# 166, ¶ 7.** While responding to the call, YPD Officer Anthony Tulipano observed Price and O'Connor on Landsdowne Avenue in the Ford Focus. *Id.***, PageID# 166, ¶ 8.** Investigation revealed that earlier that day, O'Connor and Price had driven to the apartment of Robert Reed ("Reed") and Cheryl Rotan ("Rotan"). O'Connor was seen carrying the same type of shotgun inside Reed and Rotan's apartment. *Id.***, PageID# 166, ¶¶ 1-2.** When the YPD interviewed Ashford the same day, she identified O'Connor from a photo array as the man who had attempted to break into her home. *Id.***, PageID# 166, ¶¶ 9, 10.**

The next day, Officer Tulipano observed O'Connor's rented Ford Focus parked at 2108 Burbank in Youngstown. *Id.***, PageID# 166, ¶ 11.** The police also learned that O'Connor was a convicted felon[1] and therefore prohibited from owning or possessing a firearm. *Id.***, Page ID# 166, ¶ 12.** The City of Youngstown Prosecutor's Office filed a complaint, charging O'Connor and Price with attempted aggravated burglary, and O'Connor with possession of a weapon while under a disability. *Id.***, PageID# 166, ¶ 13.** Arrest warrants followed. **PageID#166-67, ¶14.**

---

[1]*See infra*, n.2.

Reciting the above information that same day, YPD Detective Sergeant Donald Scott ("D/S Scott") obtained a search warrant from a Youngstown Municipal Judge for 2108 Burbank, Youngstown, and for O'Connor's rented Ford Focus. **R. 41-2: Search Warrant, PageID# 168-70.** On executing the search warrant later that day at 2108 Burbank, officers recovered a Maadi, an AK-47 style assault rifle with 30 rounds of ammunition, found hidden between a mattress and box spring in the south second floor bedroom, marijuana, a bag containing ammunition of various calibers, and other items. **R. 38-1: Search Warrant Affidavit Inventory, Exhibit A, PageID# 149-51.** The search also revealed O'Connor's Social Security card on a dresser in the upstairs sitting area, **R. 75: Trial Tr., Vol. 1, PageID# 761-62,** and his driver's license, which listed 2108 Burbank, Youngstown, as his home address, in the rental car, **R. 38-1: Search Warrant Affidavit Inventory, Exhibit A, PageID#149.**

A November 4, 2015, single-count indictment charged O'Connor with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[2] O'Connor moved to suppress on June 30, 2016, claiming that the affidavit failed to establish probable cause for the search, and disputing the reliability of the information supporting the affidavit and the nexus between the alleged criminal activity and the premises. **R. 38: Motion to Suppress, PageID# 139-42.** The government responded that the warrant established probable cause for the search as well as a clear nexus between possession of a firearm and the premises to be searched.

On July 13, 2016, the district court denied O'Connor's motion to suppress, without a hearing. *United States v. O'Connor*, No. 1:15CR405, 2016 U.S. Dist. LEXIS 90759 at *6 (N.D. Ohio July 13, 2016). In denying the motion, the district court reasoned:

---

[2]The indictment listed state convictions for felonious assault in Mahoning County (Ohio) Common Pleas Court in (1) 1999 and (2) 2014, and federal convictions as a felon in possession of a firearm (3) in the Western District of Pennsylvania in 2004 and (4) in the Northern District of Ohio in 2010. **R. 16: Indictment, PageID# 33-34.**

The Affidavit contains a description by four eyewitnesses of Defendant's suspected criminal activity and his possession of a shotgun on August 11, 2015. The witnesses saw Defendant in the gray 2014 Ford Focus he rented the day before. Office Tulipano saw Defendant in that car in the area on August 11, 2015 and then saw the vehicle parked at 2108 Burbank on August 12, 2015. One of the witnesses identified Defendant in a photo line-up and re-affirmed what she observed about Defendant and the shotgun in a videotaped police interview. Given all the circumstances set forth in the Affidavit, the Municipal Judge made the fair and practical inference that the gun which Defendant was prohibited from possessing would be found either inside Defendant's rental car or his Burbank residence.

*Id.* at *5-6.

The case proceeded to a jury trial on July 27, 2016. The government called three witnesses: (1) James Corrin, a State of Ohio parole officer on assignment to the United States Marshals Service, who assisted YPD in the August 12, 2015 search at 2108 Burbank, **R. 75: Trial Trans. Vol. 1, PageID# 741-75,** and who discovered the assault rifle under the mattress, *id.***, PageID# 752, 755;** (2) D/S Scott, whose affidavit led to issuance of the search warrant, who took part in the search at 2108 Burbank, *id.***, PageID# 776-803**, and who observed the assault rifle during the search, *id.***, PageID# 781-84**; and (3) David Miller, an Ohio Bureau of Criminal Investigations ("BCI") forensic scientist, who testified regarding his DNA testing on the assault rifle seized from 2108 Burbank, **R. 76: Trial Trans. Vol. 2, PageID# 808-64.** Miller testified that, using DNA standards provided to him for O'Connor and Price, he determined that the major DNA contributors to the firearm were O'Connor and Price. *Id.***, PageID# 819, 826-30.** Miller also testified that "the proportion of the population that can't be excluded as possible contributors to the mixture of DNA profiles on [the assault rifle] is 1 in 478,900" for both Price and O'Connor. *Id.***, PageID# 828.**

On July 28, 2016, the jury found O'Connor guilty of being a felon in possession of a firearm. **R. 76: Trial Trans., Vol. 2, PageID# 1014-16; R. 52: Verdict, PageID# 246.**

O'Connor was sentenced to 120 months' imprisonment, followed by a three-year term of supervised release. **R. 71: Sentencing Trans., PageID# 428; R. 65: Judgment, PageID# 380-86.** O'Connor filed a timely notice of appeal from the district court's denial of his motion to suppress and his conviction. **R. 66: Notice of Appeal, PageID# 387-88**.

## II.

### A.

O'Connor first challenges the search warrant, asserting that the supporting affidavit failed to establish probable cause. (Appellant's Br. at 9-14). Where the district court denied a motion to suppress without holding an evidentiary hearing, we "review de novo the court's legal conclusion that the affidavit provided probable cause." *United States v. Brown*, 28 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013)). We review the district court's factual findings for clear error, *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012), viewing the evidence in the light most favorable to the government, *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (citation omitted). We owe no particular deference to the conclusions of the district court as a reviewing court. *Brown*, 828 F.3d at 381.

We accord a magistrate's probable cause finding "great deference" and reverse only where the warrant issued "arbitrarily." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)). The magistrate must "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238) (1983)). We, in turn, must simply "ensure that the magistrate had a substantial basis" for finding probable cause. *Id.* (citation omitted).

In challenging the adequacy of the search warrant affidavit, O'Connor invokes the protections of the Fourth Amendment to the United States Constitution, which requires "probable cause" for a search warrant to issue. U.S. Const. amend. IV. That Amendment stands guard against the government's unreasonable "invasions . . . of the sanctity of a man's home and the privacies of life," *Boyd v. United States*, 116 U.S. 616, 630 (1886), holding law enforcement to an objective test before a home's privacy can be breached, *McDonald v. United States*, 335 U.S. 451, 455 (1948). The "teeth" in the Fourth Amendment are provided by the sanction of suppression of evidence obtained in violation of the Amendment. *Illinois v. Krull*, 480 U.S. 340, 347 (1987).

"Probable cause" is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (citation omitted). "Search warrants are not directed at persons" but rather "authorize the search of places and the seizure of things." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (citation omitted). Whether an affidavit establishes probable cause is determined solely by "look[ing] . . . to the four corners of the affidavit." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (citation omitted).

We impose no rigid, technical requirements on a search warrant affidavit. *See Brinegar v. United States*, 338 U.S. 160, 176 (1949). Rather, we seek in "a practical, nontechnical" manner to avoid both unduly hindering law enforcement and subjecting law-abiding citizens to officers' arbitrary or capricious conduct. *Id.*; *see also United States v. Graham*, 275 F.3d 490, 501-02 (6th Cir. 2001).

For a search warrant to issue, two requirements must be met. First, an affidavit "must show a likelihood . . . that the items sought are 'seizable by virtue of being connected with

criminal activity.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher*, 436 U.S. at 556 n.6). This requirement is automatically met "when the object of the search is 'contraband,'" *id.* (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)), defined as "goods that are unlawful to . . . possess," *id.* (citing Black's Law Dict., 9th ed. (2009)).

Second, the affidavit "must show a likelihood . . . 'that the items will be found in the place to be searched.'" *Id.* (quoting *Zurcher*, 436 U.S. at 556 n.6). In other words, a sufficient "nexus" must be shown between the thing being searched for and the premises to be searched. "To meet the nexus requirement . . . 'the circumstances must indicate why evidence of illegal activity will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (2009) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

**B.**

We turn to the affidavit here and whether it established probable cause for a search warrant to issue for the premises at 2108 Burbank. The affidavit began with a general statement of D/S Scott's having good cause for the belief that "a black short barreled shotgun with a pistol grip . . . , or any firearms or other fruits or instrumentalities of the crimes" was "located at 2108 Burbank, Youngstown, Ohio or in a gray Ford Focus bearing Florida registration CHY-P34." **R. 41-1: Affidavit, PageID# 165**. The affidavit also summarized D/S Scott's education, training, and experience, including a 2002 Juris Doctor and 2008 licensure as an Ohio attorney. *Id.*

The affidavit proceeded to relate, in fourteen numbered paragraphs, what "[a]ffiant ha[d] learned . . ." based upon his "education, training, experience, and participation in investigations and further based upon the experience of other law enforcement agents and officers with whom

Affiant has had contact . . . ." The affidavit noted that Reed and Rotan observed O'Connor with the shotgun inside of their residence. *Id.*, ¶ 2, **PageID# 166**. The affidavit also reported Ashford's observing O'Connor with the shotgun outside her residence, *id.*, ¶¶ **6-7**; her identification of O'Connor from a photo array, *id.*, ¶ **9**; and her video recorded statement at the YPD Detective Division, *id.*, ¶**10**. The affidavit included references to O'Connor's felony convictions, *id.*, **PageID# 166, ¶ 12,** the criminal complaint filed against him on August 11, 2015, *id.*, **PageID# 166, ¶ 13,** and a mention of "[a]rrest warrants . . . issued for the arrest of Arian O'Connor and Price, Jennifer of 2108 Burbank[,] Youngstown, Ohio", *id.*, **PageID# 166-67, ¶ 14.** There was also an explanation regarding the rented automobile: "The gray 2014 Ford Focus . . . was confirmed by Officer Melvin Johnson as registered to Arian O'Connor thru Enterprise Car Rental on August 10, 2015." *Id.*, **PageID# 166, ¶ 4.**

## C.

O'Connor's legal incapacity to possess firearms as a convicted-felon at the time the search warrant issued, 18 U.S.C. § 922(g)(1); Ohio Rev. Code 2923.13(A)(2),[3] automatically satisfied the first probable-cause requirement: the "likelihood . . . that the items sought are 'seizable by virtue of being connected with criminal activity.'" *See Church*, 823 F.3d at 355 (quoting *Zurcher*, 436 U.S. at 556 n.6). We thus focus on the second requirement, "a fair probability that contraband or evidence of a crime will be found in a particular place." *See Gates*, 462 U.S. at 238-39.

O'Connor argues that the affidavit failed to connect criminal activity and the place to be searched. (Appellant's Br. at 11-14). In particular, O'Connor challenges what he terms the

---

[3]The affidavit and search warrant both referenced Ohio Rev. Code 2923.13(A)(2), Having Weapons While Under Disability as the offense connected to the shotgun, rather than the federal statute. The other offense referenced by the affidavit and warrant was Ohio Rev. Code 2923.02 and 2911.11 Attempted Aggravated Burglary. **R. 41-1: Search Warrant Affidavit, PageID# 165; R. 41-2: Search Warrant, Page ID# 168**.

"[un]support[ed] . . . allegation that the Burbank address is in fact the residence of either Mr. O'Connor or Ms. Price," (*id.* at 11), averring that "[t]he only allegation in the entire affidavit regarding the property is found in Paragraph 11" and quoting Officer Tulipano's observation of the Ford Focus "parked at 2108 Burbank," (*id.*). O'Connor notes the affidavit's silence as to how long the car was parked there, whether it was in the driveway, or other details. (*Id.*). The government argues that the affidavit provides "a sufficient nexus between O'Connor's illegal possession of a firearm and his residence" through named eyewitness statements tying O'Connor to criminal activity and to the shotgun, observations and investigation tying him to the Ford Focus, an observation of the parked Ford Focus, and a municipal arrest warrant listing 2108 Burbank as his residence. (Appellee's Br. at 19). The government concludes that "[a]n issuing judge could reasonably infer [the necessary nexus] upon review of the affidavit." (Appellee's Br. at 22-23). This contention closely tracks the district court's finding that "the Municipal Judge made the fair and practical inference that the gun which Defendant was prohibited from possessing would be found either inside Defendant's rental car or his Burbank residence." *O'Connor*, 2016 U.S. Dist. LEXIS 90759 at *6.

O'Connor argues that the validity of the affidavit "depends entirely on whether the district court could have determined that the residence was [his] solely on the basis of the officer's observation that on a single occasion the rental car was seen 'parked at' the address." (Reply Br. at 2). Besides mischaracterizing the contents of the affidavit, O'Connor's assertion misstates the legal standard in two ways. First, it is not the district court's determination but rather that of the issuing magistrate that is of central concern. *See United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004). Second, the correct test, as the government points out, is "not whether the affidavit conclusively established that [2108 Burbank] was

O'Connor's legal residence," but rather "whether the affidavit contained sufficient facts to believe contraband would be found at" that address. (Appellee's Br. at 23); *see Gates*, 462 U.S. at 238-39.

Before the district court, moreover, O'Connor did not argue that the affidavit failed to prove that 2108 Burbank was his residence. Indeed, his motion to suppress referred to 2108 Burbank as the "home" where he "resided with his girlfriend . . . Price." **R.38: Mot. to Suppress, PageID# 139.** Because O'Connor did not raise this argument below, we would ordinarily deem it forfeited. *See Jolivette v. Husted*, 694 F.3d 760, 770 (6th Cir. 2012). Given the de novo standard of review, though, we choose to address the issue.

Even as to this narrow issue, however, O'Connor's assertions that "nowhere in the affidavit is there anything to support the allegation that the Burbank address is . . . [his] residence," and that "[t]he only allegation in the entire affidavit regarding the property" at 2108 Burbank is Officer Tulipano's observation of the parked Ford Focus, misrepresent the record. (Appellant's Br. at 11). O'Connor ignores Paragraph 14, which refers to an arrest warrant for O'Connor "of 2108 Burbank Youngstown, Ohio." **R. 41-1: Affidavit, ¶ 14, PageID# 166-67.** O'Connor calls the parked car "far too slender a reed" to support an inference connecting him to that address. (Appellant's Br. at 14). But the reed was sturdier than O'Connor claims—the affidavit linked him to the residence *both* by the presence at that address of his rented car and by mention of an arrest warrant listing 2108 Burbank as his address. These connections make O'Connor's citation to *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998) inapt: the affidavit there "completely neglect[ed] to indicate *why* the affiant believed that [the defendant] had any connection" with the place to be searched. *Id.* at 336.

As to the proper test, namely "whether the affidavit contained sufficient facts to believe contraband would be found at" that address, *see Gates*, 462 U.S. at 238-39, establishment of a nexus is a "fact-intensive question" requiring examination of "the totality of circumstances presented," *Brown*, 828 F.3d at 382 (citing *Gates*, 426 U.S. at 238).

A warrant may not issue if the underlying affidavit "fail[s] to provide *any* nexus between the residence and the illegal activity." *See Laughton*, 409 F.3d at 750 (citation omitted). O'Connor argues that his affidavit so failed, noting that it contained no observations of persons entering or exiting the residence, (Appellant's Br. at 11), and no information as to firearms being carried into the residence or stored there, (*id.* at 13). He also contends that the Ford Focus rented by O'Connor did not support a nexus because Price, not O'Connor, was seen driving it. (*Id.* at 12-13).

But the affidavit in fact contained multiple points of information supporting a nexus: statements connecting O'Connor with illegal activity involving the shotgun and the Ford Focus came from at least three named eyewitnesses.[4] **R. 41-1: Affidavit, ¶¶ 2, 6-7, 9-10, PageID# 166.** *See United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005) ("The statements of an informant . . . whose identity was known to the police and who would be subject to prosecution for making a false report, are . . . entitled to far greater weight than those of an anonymous source."); *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008). Further, the affidavit contained reports of direct observation by a police officer of O'Connor's movements about Youngstown in the Ford Focus, **R. 41-1: Affidavit, ¶ 8, PageID# 166**; police verification with

---

[4]*See* supra, II.B. In addition to Ashford, Reed, and Rotan, there may have been a fourth named eyewitness: Scott, who shared the 495 Sunshine Avenue residence with Ashford. While not making it clear whether Scott observed O'Connor carrying the shotgun outside his and Ashford's residence, as did Ashford, the affidavit would support an inference that he did. The district court saw it that way, referring to "description by four eyewitnesses of [O'Connor's] suspected criminal activity and his possession of a shotgun on August 11, 2015." *O'Connor*, 2016 U.S. Dist. LEXIS 90759 at *5.

the car rental company that O'Connor had rented the Ford Focus the previous day, ***id.*, ¶ 4**; O'Connor's past felony convictions, ***id.*, ¶ 13**; mention of the arrest warrant issued for O'Connor, ***id.*, ¶ 14, PageID# 166-67**; and observation of the Ford Focus parked at 2108 Burbank, ***id.*, ¶ 11, PageID# 166.**

In contending that the nexus in this case is strong, the government cites *Williams*, 544 F.3d 683. (Appellee's Br. at 26). There, this Court upheld a warrant based on named informants' information about the defendant's criminal activity, his recent arrest for carrying a concealed weapon, and police observation of the defendant's car parked outside his house. O'Connor attempts to distinguish *Williams* because there were two observations of a vehicle parked at the residence there, and because it was undisputed that the residence was the defendant's; here, he argues, there was only one observation of the parked car and the affidavit failed to prove that 2108 Burbank was O'Connor's residence. (Reply Br. at 3).

But *Williams* is actually closely on point. O'Connor himself quotes a passage in which this Court found, in view of "the evidence that [the defendant] possessed multiple guns, and had recently used them to further his criminal activity, [that] the issuing judge could have reasonably inferred that [the defendant] kept at least one handgun at his residence." (Reply Br. at 3, quoting *Williams*, 544 F.3d at 688). Here, named eyewitness evidence pointed to O'Connor's possessing a firearm and his recent use of it to further his criminal activity, he was linked to the Ford Focus he had just rented and had used in connection with criminal activity, and the issuing magistrate could have reasonably inferred that O'Connor was keeping the weapon either in the rented car or at the residence where the car was seen parked and which was listed as his residence on his arrest warrant.

O'Connor also relies on *Carpenter*, 360 F.3d 591, where this Court found that probable cause was not established by an affidavit that stated that marijuana was growing near a residence and a road led from the field to near the residence. *Id.* at 594. The police had observed a beaten footpath between the residence and the marijuana patches but omitted that point from the affidavit. *Id.* at 594. This Court held that, had the affidavit mentioned the beaten path, and observation of two men walking from the marijuana patches to the residence, probable cause would likely have been established. *Id.* As it was, though, the connection between residence and field was "too vague, generalized, and insubstantial." *Id.* at 595. But *Carpenter* is readily distinguishable: far from "vague, generalized, [or] insubstantial," the affidavit here noted multiple links between O'Connor's recent criminal activity, the firearm, the rental car, and 2108 Burbank—links by eyewitness statements and by police observation.

We therefore conclude that the affidavit established a sufficient basis for the magistrate's "practical, common sense decision" that, in view of "all the circumstances set forth in the affidavit," there was "a fair probability that contraband or evidence of a crime [would] be found" at 2108 Burbank. *See Laughton*, 409 F.3d at 747 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 238).

**D.**

Because this Court finds that the affidavit presented to the magistrate established probable cause to search O'Connor's residence, we need not address the "good faith exception" announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 913, 926 (1984). However, assuming *arguendo* that the affidavit here failed to establish probable cause, we briefly consider the exception.

The *Leon* Court held the Fourth Amendment exclusionary rule inapplicable where police officers rely in good faith on a warrant ultimately determined to lack probable cause. *Leon*, 468 U.S. at 913. The exception does not apply, though, "when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable," *Laughton*, 409 F.3d 744, 748 (citing *Leon*, 468 U.S. at 914-23)—in other words, the affidavit is "bare bones," *see United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (quoting *Leon*, 468 U.S. at 915). In order not to be found "so lacking," an affidavit must contain "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749.

Here, given the affidavit's presentation of statements from at least three named eyewitnesses connecting O'Connor with criminal activity, the shotgun, and the Ford Focus, as well as its inclusion of information based on police observation or verification, connecting the Ford Focus with O'Connor and with 2108 Burbank, and detailing O'Connor's felony convictions, the search warrant on which it was based contained sufficient indicia of probable cause as to justify an officer's good faith reliance on the warrant. We therefore conclude that, even were the warrant found to fail to establish probable cause, the *Leon* "good faith exception" would apply, and we would affirm the district court's denial of the motion to suppress on that ground.

## III.

O'Connor also challenges the sufficiency of the evidence supporting his conviction. We review the issue of insufficiency of evidence de novo, seeking "to determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States*

*v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (citation omitted) (emphasis added); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A defendant challenging sufficiency of evidence "bears a very heavy burden." *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). We will reverse only "if [the] judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (citation omitted).

To secure a conviction under 18 U.S.C. § 922(g), the government was required to prove that (1) O'Connor was a convicted felon who (2) knowingly possessed the firearm specified in the indictment, and (3) the firearm traveled in or affected interstate or foreign commerce. 18 U.S.C. § 922(g)(1); *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007); *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (citation omitted). O'Connor disputes only the second element, sufficiency of evidence to support his possession of a firearm. (Appellant's Br. at 14-20).

Possession of a firearm may be actual or constructive. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). In actual possession, the weapon "is within the immediate power or control of the individual." *Walker*, 734 F.3d at 455 (citation omitted). Constructive possession occurs where the individual "knowingly has the power and the intention at a given time to exercise dominion and control over an object," *id.* (citation omitted). Possession may be proven by direct or circumstantial evidence. *United States v. Kimbrough*, 101 F. App'x 608, 611 (6th Cir. 2004) (citation omitted). The evidence need not remove every reasonable hypothesis save that of guilt. *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002).

Here, the weapon at issue was a Maadi, AK-47 style semi-automatic rifle. **R. 38-1: Search Warrant Affidavit Inventory, Exhibit A, PageID# 151.** O'Connor argues that (1)

proximity alone is insufficient to establish constructive possession, particularly where another person (Price) was in equal proximity to the weapon, (Appellant's Br. at 16); (2) the witnesses observed O'Connor with a different weapon than the one found during the search, (*id.* at 17-18); (3) the DNA evidence proves, at best, that O'Connor touched the weapon at some point but fails to satisfy the "dominion and control" test (*id.* at 18-19); and (4) no other circumstantial evidence supported an inference of O'Connor's constructive possession of the weapon, (*id.* at 19-20).

The government contends that ample evidence supported O'Connor's conviction because the weapon was found in premises over which O'Connor exercised dominion, the DNA evidence established more than O'Connor's "mere presence" in the place where the weapon was found, and Price's testimony that the firearm was hers and that she never saw O'Connor handle it was contradicted by other parts of her testimony and therefore the jury had a rational basis for discounting Price's testimony. (Appellee's Br. at 30-35).

O'Connor argues, correctly, that a defendant's mere presence in a place where a weapon was found is insufficient to establish possession. (Appellant's Br. at 15, citing *Grubbs*, 506 F.3d at 439. Moreover, proximity to a weapon police seize during a search, without more, does not establish constructive possession. (*Id.* at 16, citing *United States v. Soto*, 779 F.2d 558, 560 (9th Cir. 1986). Proximity may show accessibility, but not the crucial factor of dominion or control. *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc); *Soto*, 779 F.2d at 560.

Price testified that the firearm belonged to her. **R. 76: Trial Tr., Vol. 2, PageID# 881.** She also testified that she and O'Connor argued because he "wanted the [firearm] out of the house," *id.***, PageID# 883-84,** that she never saw O'Connor touch the firearm "in front of [her]," *id***, PageID# 884,** and that she knew how to operate it, *id.***, PageID# 901-02.** However, on cross-

examination she admitted to telling police that O'Connor had access to the firearm, that she depended on him to protect her with it, *id.*, **PageID# 917-18,** and that she did not know how to use it, *id.*, **PageID# 902-03.** These contradictions gave the jury a rational basis to discount exculpatory parts of her testimony and conclude that O'Connor constructively possessed the firearm. *See United States v. Coffee*, 434 F.3d 887, 896 (6th Cir. 2006).

O'Connor relies on *United States v. Beverly*, where a defendant was found standing in a room of a house belonging to another; during a pat-down of the defendant an officer noticed two guns in a waste can near the defendant. 750 F.2d 34, 35 (6th Cir. 1984). The defendant's fingerprints were found on one of the guns, but this Court reversed the defendant's conviction for violating 18 U.S.C. § 922(h)(1) (1982). *Id.* at 37. The Court held that the defendant's being in a room of the residence and standing near a waste can containing a gun that defendant's fingerprints revealed he had touched at some point were insufficient to establish that the defendant "knowingly [had] the power and the intention at a given time to exercise dominion and control" over the gun. *Id.* at 37.

However, *Beverly* is readily distinguishable, as several pieces of evidence pointed to O'Connor's exercising dominion over the room where he and the weapon were found. The officers executing the search warrant saw O'Connor in his boxer shorts, **R. 75: Trial Tr., Vol. 1, PageID# 750-51,** and his Social Security card was found on a dresser in a room adjacent to the bedroom in which the assault rifle was found, *id.*, **PageID# 761-62.** In addition, the driver's license police recovered from the Ford Focus listed 2108 Burbank as O'Connor's residence. **R. 38-1: Search Warrant Affidavit Inventory, Exhibit A, PageID# 149.** Thus, the jury had "substantial evidence" on which to conclude that O'Connor exercised dominion and control over

the bedroom in which the weapon was found, and over the entire residence. *See United States v. Craven*, 478 F.2d 1329, 1333-34 (6th Cir. 1973).

O'Connor also argues that an inference of constructive possession of the firearm is defeated by the fact that there were two people—himself and Price—in equal proximity to the weapon. (Appellant's Br. at 16). He cites no case law or statutory authority in support of this contention. And, while it is true that constructive possession of the firearm by Price and not O'Connor may be a reasonable hypothesis, "the evidence need not remove every reasonable hypothesis except that of guilt." *See Tarwater*, 308 F.3d at 504 (citation omitted).

Finally, O'Connor argues that the DNA evidence "was insufficient to establish constructive possession." (Appellant's Br. at 18). He contends that the DNA evidence, "seem[ingly] compelling," "becomes much less so" given the possibility, testified to by the BCI analyst, that the presence of O'Connor's DNA resulted from Price transferring that DNA onto the firearm. (*Id.*). He avers that "all this proves is that, at best, Mr. O'Connor at some point touched the weapon." (*Id.*). But the DNA evidence was far from the only evidence supporting constructive possession; a rational trier of fact could view the DNA evidence as additional incriminating evidence that, coupled with other evidence of constructive possession, "tip[ped] the scale in favor of sufficiency." *Arnold*, 486 F.3d at 183 (citation omitted).

In any event, the operant question is, more broadly, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Callahan*, 801 F.3d at 616 (citation omitted) (emphasis added). Here, a rational trier of fact could have found beyond a reasonable doubt that O'Connor was guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g), where the only element in dispute was O'Connor's knowing possession of the firearm

seized from his residence, and substantial evidence supported the conclusion that O'Connor had constructive possession of the firearm. We therefore hold that the evidence, viewed in the light most favorable to the prosecution, was legally sufficient to support the § 922(g) conviction. *See Kimbrough*, 101 F. App'x at 611.

## V.

For the foregoing reasons, we **AFFIRM** the district court's denial of Defendant's motion to suppress, and **AFFIRM** Defendant's conviction and sentence for being a felon in possession of a firearm.